**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

---------------------------------------------------------------

| | | |
|---|---|---|
| YVONNE COLQUITT-LEDBETTER | : | |
| 2033 E. Lehigh Ave., Unit 31C | : | |
| Philadelphia, PA 19125 | : | CIVIL ACTION NO.: _____ |
| | : | |
| Plaintiff, | : | **JURY TRIAL DEMANDED** |
| | : | |
| v. | : | |
| | : | |
| THE CHILDREN'S HOSPITAL OF | : | |
| PHILADELPHIA | : | |
| 3401 Civic Center Blvd. | : | |
| Philadelphia, PA 19104 | : | |
| | : | |
| Defendant. | : | |

---------------------------------------------------------------

## <u>COMPLAINT – CIVIL ACTION</u>

Plaintiff Yvonne Colquitt-Ledbetter ("Plaintiff"), by and through her undersigned

attorney, for her Complaint against Defendant The Children's Hospital of Philadelphia

("Defendant") alleges as follows:

### <u>INTRODUCTION</u>

1.      Plaintiff brings this Complaint contending that Defendant violated her rights

under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, by

discriminating against her because of her disability, failing to accommodate her disability, and

retaliating against her for complaining about the aforementioned discrimination and for her

requests for a reasonable accommodation.[1]

2.      Plaintiff further contends that Defendant interfered with her rights under the

Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.* to job-protected leave for

---

[1] Plaintiff intends to amend her complaint to add parallel counts of discrimination and retaliation under the
Pennsylvania Human Relations Act and Philadelphia Fair Practices Ordinance upon the administrative exhaustion of
those claims, which will occur on November 5, 2026.

her own serious health condition and retaliated against her for attempting to exercise her rights to the same in violation of the FMLA.

## PARTIES

3.     Plaintiff Yvonne Colquitt-Ledbetter is a resident of Pennsylvania and currently maintains a residence at 2033 E. Lehigh Ave., Unit 31C, Philadelphia, PA 19125.

4.     Upon information and belief, Defendant The Children's Hospital of Philadelphia is a nonprofit corporation organized and existing under the laws of the Commonwealth of Pennsylvania, with an office address registered with the Pennsylvania Department of State of 3401 Civic Center Blvd., Philadelphia, PA 19104.

## JURISDICTION AND VENUE

5.     On or around November 5, 2025, Plaintiff filed a Charge of Discrimination against Defendant with the United States Equal Employment Opportunity Commission (the "EEOC"), which was dual-filed with the Philadelphia Human Relations Commission, thereby satisfying the requirements of 42 U.S.C. § 12117(a); 2000e-5(b) and (e).  Plaintiff's EEOC Charge was docketed as Charge No. 530-2026-00955.  Plaintiff's EEOC Charge was filed within one hundred eighty (180) days of the unlawful employment practices alleged herein.

6.     By correspondence dated June 8, 2026, Plaintiff received a Determination and Notice of Right to Sue (Upon Request) from the EEOC regarding the Charge, advising her that she had ninety (90) days to file suit against Defendant.

7.     On or about July 7, 2026, within the relevant statutory timeline, Plaintiff filed the instant matter.

8.     Plaintiff has therefore exhausted her administrative remedies and has complied with all conditions precedent to maintaining this action.

9. This action is authorized and instituted pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, and the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.*

10. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343, as it is a civil rights action arising under the laws of the United States.

11. The venue in this district is proper pursuant to 28 U.S.C. § 1391, inasmuch as the Plaintiff resides in this district and the events giving rise to this action occurred in this district.

## FACTUAL ALLEGATIONS

12. Paragraphs 1 through 11 are hereby incorporated by reference as though the same were fully set forth at length herein.

13. Plaintiff began her employment with Defendant on or around August 5, 2024, when she was hired as a Clinic Aide, later transitioning to the position of Clinical Support Associate, a full-time position.

14. Plaintiff performed her job well and received positive feedback concerning her performance.

15. Plaintiff has asthma, a disability within the meaning of the ADA in that it substantially limits her in one or more major bodily functions, including breathing, and in one or more major life activity, including performing manual tasks, working, and performing other daily tasks.

16. Defendant was well aware of Plaintiff's disabling asthma and need for accommodations in connection therewith, which led Plaintiff to ask her supervisor, Jonel Williams ("Ms. Williams"), Ambulatory Orientation Supervisor/Ambulatory Clinical Support, about the availability of FMLA to cover asthma-related absences as early as November 13, 2024.

3

17. When Ms. Williams mentioned that Plaintiff had not "been at CHOP long enough" to qualify for FMLA, Plaintiff replied, "I don't want to be fired for asthma attacks and weak immune system."

18. Despite this, Defendant proceeded to write Plaintiff up for asthma-related absences.

19. In June 2025, Plaintiff began experiencing particularly acute distress due to her asthma, resulting in her having to call out of work and, ultimately, exhausting her allotted sick time, referred to as Paid Personal Leave ("PPL").

20. To protect her job, on June 18, 2025, Plaintiff filed a formal request for intermittent leave due to her asthma.

21. This request was denied as Plaintiff had not yet reached 12 months of employment for purposes of eligibility under the FMLA.

22. Plaintiff was advised Defendant had decided not to terminate her because her absences would have been covered by the FMLA, for which Plaintiff would soon be eligible as Plaintiff reached her one-year anniversary with CHOP.

23. Nevertheless, because her absences were disability-related and beyond her control, Plaintiff filed a complaint with HR explaining she felt she was being treated unfairly due to her disability and requested accommodations.

24. On July 30, 2025, Plaintiff woke up experiencing an asthmatic episode so severe she had to seek emergency medical treatment.

25. Plaintiff promptly informed her supervisor, Ms. Williams, that she was seeking treatment for an asthma attack and would not be able to come into work.

4

26. Plaintiff received treatment at an urgent care center, was prescribed prednisolone, and was informed she could return to work on August 1, 2025.

27. Plaintiff promptly informed Ms. Williams of the same.

28. The following day, July 31, 2025, a leave of absence claim was initiated for Plaintiff through Sedgwick, Defendant's third-party benefits provider.

29. Plaintiff returned to work on August 1, 2025 without incident.

30. On August 4, 2025, Plaintiff spoke with Ms. Williams, informing her that she had doctor's notes covering her recent asthma-related absences and asked for permission to leave early on August 5, 2025 (i.e. her one-year anniversary with CHOP) to meet with her doctor to have her FMLA paperwork filled out.

31. Ms. Williams referred Plaintiff to Ms. Williams' own supervisor, Kelly, who asked her whether Plaintiff had any PPL remaining.

32. Because she was not sure whether she was aware, Plaintiff told Kelly about the situation in June when Defendant had decided not to terminate her for asthma-related absences which Plaintiff believed had caused her to exhaust her PPL at that time.

33. Plaintiff did not tell Kelly she was out of PPL and, in fact, still had 23.8 hours of PPL left at the time Plaintiff spoke with her.

34. Shortly thereafter that same day, Kelly informed Plaintiff she was being terminated.

35. Specifically, Kelly told Plaintiff, "Our policy does not tolerate time exhaustion."

36. Plaintiff then received a notification from Sedgwick that her request for time off starting July 30, 2025 had been denied because she had not yet attained the FMLA's required 12-months of service (which Plaintiff was only a few days shy of as of July 30, 2025).

5

37.     Neither Sedgwick nor Defendant considered Plaintiff's eligibility for a reasonable accommodation under the ADA, PHRA, or PFPO in the form of a brief medical leave of absence to bridge the short gap between her disability-related absences at the end of July and her one-year anniversary with CHOP on August 5, 2025, when Plaintiff would have become eligible for job-protected intermittent leave under the FMLA for her asthma flareups.

38.     To add insult to injury, shortly after Plaintiff was terminated, Plaintiff received an email from CHOP's Bravo Recognition Program congratulating her on her one-year anniversary with Defendant.

39.     Upon information and belief, Plaintiff was replaced in her role by a non-disabled individual.

40.     Defendant discriminated against Plaintiff and ultimately terminated her employment because of her disability, failed to accommodate her disability, and retaliated against her because of her complaints of disability discrimination and requests for an accommodation in connection with the same in violation of the ADA.

41.     Plaintiff's asthma qualified as a serious health condition under the FMLA, for which she would have been eligible to take up to twelve (12) weeks of job-protected medical leave, on an intermittent or continuous basis, as of her 1-year anniversary with CHOP on August 5, 2025.

42.     By terminating Plaintiff's employment for asthma-related absences just days before her official eligibility for FMLA leave, and the same day she requested time off to have her doctor complete FMLA paperwork to secure that leave, Defendant engaged in unlawful anticipatory interference and retaliation under the FMLA.

43.     Plaintiff has, because of Defendant's unlawful, discriminatory, and retaliatory actions alleged herein, struggled to obtain other employment, and has been forced to expend significant out of pocket expenses on health care.

44.     As a result of Defendant's deliberate, willful, malicious, and unlawful actions, Plaintiff has suffered damages, including, but not limited to, loss of employment, promotion benefits, earnings and earnings potential, loss of potential commissions and bonuses, and other economic damages, and has also suffered mental anguish, emotional pain and suffering, emotional distress, humiliation, and damage to her professional reputation.

**COUNT I**
**AMERICANS WITH DISABILITIES ACT**
**42 U.S.C. § 12101, *et seq.***
**DISCRIMINATION AND RETALIATION**

45.     Paragraphs 1 through 44 are hereby incorporated by reference as though the same were fully set forth at length herein.

46.     At all times relevant hereto, Plaintiff was an employee within the meaning of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*

47.     At all times relevant hereto, Defendant had at least fifteen (15) employees.

48.     Plaintiff was a qualified individual with a disability within the meaning of the ADA.

49.     Plaintiff's disability substantially limits Plaintiff in one or more major life activities and bodily functions as described above.

50.     Defendant was aware of Plaintiff's disability and need for an accommodation in connection therewith.

51.     By reason of the foregoing, Defendant, through its agents, officers, servants, and/or employees, violated the ADA by terminating Plaintiff on account of her disability, failing

7

to accommodate her, and retaliating against her for her complaints of disability discrimination and for requesting a reasonable accommodation for her disability.

52. As a result of Defendant's deliberate, unlawful, and malicious acts as set forth above, Plaintiff has suffered loss of employment, earnings, earnings potential, raises, and other significant economic benefits, along with emotional pain and suffering, emotional distress, and humiliation.

**WHEREFORE**, as a result of the unlawful conduct of Defendant, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant, and grant her the maximum relief allowed by law, including, but not limited to:

a) Back wages and front pay, in an amount to be determined at trial;

b) Punitive, compensatory, and/or exemplary damages in an amount to be determined at trial, but sufficient to punish Defendant for its intentional, willful, negligent, wanton, and/or malicious conduct;

c) Plaintiff's costs, disbursements, and attorneys' fees incurred in prosecuting this matter;

d) Pre-judgment interest in an appropriate amount; and

e) Such other and further relief as is just and equitable under the circumstances.

**COUNT II**
**FAMILY AND MEDICAL LEAVE ACT**
**29 U.S.C. § 2601, et seq.**
**<u>ANTICIPATORY INTERFERENCE AND RETALIATION</u>**

53. Paragraphs 1 through 52 are hereby incorporated by reference as though the same were fully set forth at length herein.

54.    Defendant employed at least fifty (50) employees at or within seventy-five (75) mile radius of Plaintiff's worksite for each working day in each of twenty (20) or more workweeks in 2025 and 2024.

55.    Plaintiff worked well over 1,250 hours during her first year of employment with Defendant.

56.    As stated above, Plaintiff would have reached 1-year of employment with Defendant on August 5, 2025, and therefore have become eligible for FMLA leave on that date, but for Defendant's termination of her employment for supposed PPL exhaustion the previous day, August 4, 2025.

57.    Nevertheless, at the time of her termination, Plaintiff had a PPL balance equivalent to several work days (i.e. 23.8 hours), and therefore sufficient PPL to bridge the gap to August 5, 2025 (and FMLA eligibility) even without an ADA accommodation.

58.    Defendant violated the FMLA terminating Plaintiff's employment in anticipation of her imminent eligibility under the FMLA and in retaliation for her requests for leave under the same.

59.    The aforementioned actions constitute both anticipatory interference and retaliation violations of the FMLA.

60.    Plaintiff has, because of Defendant's wrongful termination of her employment, been unable to obtain other employment, and has suffered significant economic damages.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant and grant the maximum relief allowed by law, including, but not limited to:

a)    Back pay and front pay in an amount to be determined at trial;

b)   Liquidated damages;

c)   Plaintiff's costs, disbursements, and attorney's fees incurred in prosecuting this action;

d)   Pre-judgment interest in an appropriate amount; and

e)   Such other and further relief as the Court deems just and equitable under the circumstances.

## JURY DEMAND

Plaintiff hereby demands a trial by jury as to all issues so triable.

Respectfully submitted,

**MURPHY LAW GROUP, LLC**

By:   /s/ Michael Groh
Michael Murphy, Esq.
Michael Groh, Esq
Eight Penn Center, Suite 2000
1628 John F. Kennedy Blvd.
Philadelphia, PA 19103
TEL: 267-273-1054
FAX: 215-525-0210
murphy@phillyemploymentlawyer.com
mgroh@phillyemploymentlawyer.com
Attorneys for Plaintiff

Dated: July 7, 2026

## DEMAND TO PRESERVE EVIDENCE

The Defendant is hereby demanded to preserve all physical and electronic information pertaining in any way to Plaintiff's employment, to her potential claims and her claims to damages, to any defenses to same, including, but not limited to electronic data storage, employment files, files, memos, job descriptions, text messages, e-mails, spreadsheets, images, cache memory, payroll records, paystubs, time records, timesheets, and any other information and/or data which may be relevant to any claim or defense in this litigation.